FILED

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

2016 JAN -6  P 3: 22

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| MATTHEW H. SWYERS,        ) | |
| ) | |
|     Plaintiff,        ) | |
| ) | |
| v.        ) | CASE NO. 1:16CV15-LO/IDD |
| ) | |
| UNITED STATES PATENT AND TRADEMARK ) | JURY TRIAL DEMANDED |
| OFFICE        ) | |
| ) | |
|     and        ) | |
| ) | |
| RONALD K. JAICKS        ) | |
| 7115 Devonshire Rd.        ) | |
| Alexandria, VA 22307        ) | |
| ) | |
|     and        ) | |
| ) | |
| GERARD A. TAYLOR        ) | |
| 815 King St., Apt. 5C        ) | |
| Alexandria, VA 22314-3087        ) | |
| ) | |
|     and        ) | |
| ) | |
| LEONARDO VILLARREAL ALEJANDRO ) | |
| Office of General Counsel        ) | |
| 600 Dulany Street        ) | |
| Crystal Park Two, Suite 905        ) | |
| Arlington, VA 22202        ) | |
| ) | |
|     and        ) | |
| ) | |
| JANE DOE        ) | |
| ) | |
|     Defendants.        ) | |

## COMPLAINT

### Preliminary Statement

1.     This is an action for preliminary and final injunction to protect rights safeguarded by the Constitution, to enjoin any enforcement proceedings to the extent they are based, in whole or in part, on alleged failures to cooperate with or respond fully to the issuance of "Requests for information" ("RFIs") by the United States Patent and Trademark Office's ("USPTO") Office of Enrollment and Discipline ("OED") in violation of Plaintiff's rights under the Fourth and Fifth Amendments to the Constitution of the United States, and for *Bivens* damages against certain federal officers and officials in their personal capacities for violation of Plaintiff's Constitutional rights to due process and privacy.  This action is brought by Matthew H. Swyers ("Swyers"), against whom the individual Defendants have violated his constitutional rights by issuing "Requirements for Information" (RFIs) designed to harass, overburden, invade, injure and damage the Plaintiff and his business, and which violate fundamental rights to due process by virtue, among other things, of the complete absence of any means to challenge the RFIs' overbreadth, oppressiveness, or invasion of the attorney-client privilege, on pains of finding Swyers guilty of sanctionable conduct for not answering the RFIs to the OED's satisfaction.

2.     Specifically, since August 2014, the Defendants have made it increasingly difficult for Swyers to practice as a trademark attorney before the USPTO by use of obtrusive and overly burdensome investigatory tactics, through the use of RFIs seeking information on as many as 15,000 trademark applications filed by Swyers, as to which no avenue exists for challenges based on breadth, privilege, vagueness, harassment, relevance, or invasion of attorney-client

2

privilege, and through direct contacts and issuance of mountains of requests for information to Swyers' current and former employees.   Each RFI that is not answered to the OED's satisfaction – and none ever are, despite the expenditure of hundreds of thousands of dollars in legal fees and untold lost hours spent by Swyers himself to answer them, and then answer them again in an effort to address the OED's endless list of asserted deficiencies and demands for legal analysis -- becomes the basis for an additional "failure to cooperate" charge against Swyers, meaning that not only is there no way to challenge abusive, overreaching, or privilege-invading requests, but the requests are accompanied by a threat that anything but acquiescence could result in a loss of the right to continue in business, with no avenue to seek protection from their use as a bludgeon against Swyers, his employees, and his clients.

3.     The burdensome and oppressive nature of the use of RFIs and the unavailability of any means of review, forcing respondent to answer on pain of an enforcement action for failing to do so, has been previously noted by the United States Court of Appeals for the Fourth Circuit. The practical effect of the constitutional violations is to force practitioners to agree to any proposed sanctions or leave the practice of trademark law altogether.

4.     This suit seeks declaratory and injunctive relief, and monetary damages based on or resulting from irregular, invasive, disruptive and unreasonable issuance of RFIs by the OED and, specifically, the individual defendants.

### Jurisdiction and Venue

5.     This suit seeks relief arising under the Constitution of the United States as previously noted above.   This court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

3

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as the majority of the actions giving rise to the complaint occurred in Arlington County, Virginia where the OED and USTPO are headquartered and where the Defendant's offices are located.

## Parties

7.      Plaintiff Matthew H. Swyers is a U.S. citizen and resident of North Carolina. Swyers is a practicing trademark attorney before the USPTO located in Alexandria, Virginia, and is admitted to practice in the Commonwealth of Virginia as well as other jurisdictions.

8.      Defendant the United States Patent and Trademark Office is an agency of the United States.

9.      Defendant Ronald K. Jaicks ("Jaicks") at all times relevant hereto was the duly appointed and acting General Counsel for the OED and a federal officer whose duties include overseeing the OED, hearing petitions, and making investigatory determinations.  Defendant Jaicks is sued in his individual capacity.

10.      Defendant Gerard A. Taylor ("Taylor") at all times relevant hereto was the duly appointed and acting Staff Counsel for the OED and a federal officer whose duties include undertaking investigations on the part of the OED.  Defendant Taylor is sued in his individual capacity.

11.      Defendant Leonardo Villarreal Alejandro ("Villarreal Alejandro") at all times relevant hereto was the duly appointed and acting Staff Attorney for the OED and a federal officer whose duties include undertaking investigations on the part of the OED.  Defendant Villarreal Alejandro is sued in his individual capacity.

4

12.     Defendant Jane Doe is at all times relevant a duly appointed and acting member of the OED and a federal officer who participated in the OED investigation of Matthew H. Swyers. Defendant Jane Doe is sued in her individual capacity.

## FACTUAL BACKGROUND

### *The Trademark Company*

13.     In 2003, Matthew H. Swyers founded The Trademark Company, PLLC, a Virginia law firm whose practice is dedicated exclusively to the representation of clients in the protection of their federal trademark and copyright rights.   The firm is an unbundled law practice as recognized under the ABA Model Rules.   From 2003 to the present, the firm has represented over 20,000 clients.

14.     The Trademark Company's practice provides trademark access to thousands of persons who would not normally be able to afford to protect their intellectually property under standard law firm pricing structures.

15.     Each year, The Trademark Company, through Swyers, handles thousands of research reports, applications to register marks, refusals to register marks, as well as litigation concerning trademarks for clients.   The Trademark Company has been listed as one of the top trademark law firms in the United Stated by Intellectual Property Today magazine.

16.     From 2003 to the present, the firm has represented over 20,000 clients.   All of the thousands of applications for marks are directly filed with the USPTO, which naturally creates a significant case load for the USPTO examiners.

17.     To Plaintiff's knowledge, none of these clients has lodged a complaint with the

USPTO about Swyers. Rather, upon information and belief, the investigation targeted Swyers due to the volume of his filings.

### Commencement of Investigation into Swyers' Work

18.     Beginning August 29, 2014, agent Villarreal Alejandro of the Office of Enrollment and Discipline ("OED") commenced an investigation of Swyers' work as a trademark lawyer. The investigation was undertaken despite no client complaints, allegations of unethical behavior or violation of USPTO rules.

19.     On or about August 29, 2014 Swyers received an initial Request for Information ("RFI") from the OED seeking information regarding three trademark applications handled by Swyers. The letter warned that "It is a violation of USPTO Rules of Professional Conduct to fail to cooperate with the OED in an investigation ..." further threatening "... if you do not respond to this request for information, the Committee on Discipline may draw an adverse inference in making a determination..." on the issue.

21.     On or about October 29, 2014 Swyers, through counsel, complied with the OED's request and provided the requested information.

22.     Almost immediately, the OED's investigation broadened into an inquiry into virtually every trademark matter ever handled by Swyers.

### Improper Client Contacts and Invasion of Attorney-Client Privilege

23.     Staff attorneys for the OED began contacting various of Swyers' clients by letter and telephone regarding their trademark applications. For example, on or about December 12, 2014 the OED staff attorney Villarreal Alejandro wrote numerous letters to clients of Swyers,

without Swyers' prior knowledge or consent, requesting their "...assistance in connection with a review of [their] trademark application."   The letters requested that Swyers' clients confidentially contact the OED staff attorneys Taylor, Villarreal Alejandro, or Elizabeth Dorsey ("Dorsey").

24.   The letters made no mention whatsoever that the OED was investigating anyone, let alone the recipients' own counsel, or that the purpose of the communication was to gather evidence in support of that investigation or of potential charges against Swyers.

25.   The letters asked about the validity of the marks, specifically whether the clients had actually provided the marks to The Trademark Company.   The letters, by implication, suggested that a false statement had been made in the application about the mark, a potential ground for cancellation of the trademark on grounds of fraud.   However, the letters made no mention of this, nor did the letters advise the clients of their rights with regard to answering the RFIs, or suggest that the clients speak to their attorney or other counsel prior to answering the RFIs.

26.   The letters made no mention of the existence of the attorney-client relationship between the clients and their attorney, Swyers, nor did they indicate that the privilege could be deemed waived by answering the RFI.

27.   Instead, the letters encouraged Swyers' clients to call the OED staff counsel with "questions", and provide a written response, without at any time stating that the OED was investigating Swyers.

28.   Upon information and belief, on at least one occasion an OED staff member called a client of Swyers', asked questions about the application Swyers filed the client's behalf,

assured the client that they did not need to worry because the caller was not an attorney, and expressly advised the client that they need not speak with Swyers before answering questions, again without advising the client regarding the existence of the attorney-client relationship or about the potential waiver of such privilege.

29.     After clients began receiving the letters from the OED, Swyers and his office received numerous calls from clients inquiring as to the basis for the letters. Ultimately, the volume of calls reached such a point that on December 16, 2014, Swyers, by counsel, spoke to the individual defendants herein and requested that they cease all efforts in contacting Swyers' clients directly and provide a list of clients contacted. OED attorney Jaicks advised that a list would be provided but never did so.

30.     The written and telephonic contacts with Swyers' clients were in violation of Rule 4.3(a) of the Rules of Professional Conduct of the Supreme Court of Virginia, in that the persons contacted were not represented with regard to the matter, i.e., the investigation of Swyers, the OED staff attorneys implied that they were disinterested, the OED staff attorneys knew or reasonably should have known that the unrepresented persons misunderstand the lawyer's role in the matter, and the OED staff attorneys did not make reasonable efforts to correct the misunderstanding.

31.     The letters themselves contained legal advice in that they described to the clients what a "specimen" was. Such advice, together with any advice by telephone that the clients did not need to speak to an attorney before answering the OED's questions, violated Rule 4.3(b) of the Rules of Professional Conduct of the Supreme Court of Virginia, which prohibits a lawyer

8

from giving advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interest of the client.

32.     The letters also were violative of Rule 4.2 of the Rules of the Supreme Court of Virginia, in that they constituted prohibited communication about the subject matter of a representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so. The OED was soliciting information from Swyers' clients that, in the OED's view, constituted potential evidence of fraud on the USPTO, which would fall within the subject matter of those clients' representation by Swyers.   Indeed, in a December 19, 2014 telephone communication with Swyer's counsel, Jaicks and Villarreal Alejandro specifically raised the possibility that the trademark applications filed by Swyers could be found to be fraudulent and that Swyers' clients could be damaged.

33.     The letters have damaged the reputation of Swyers and his firm.

34.     Upon information and belief, the USPTO is not appreciative of the added workload facilitated by the services provided by Swyers through The Trademark Company or similar services, which has prompted an investigation by the OED into his firm.

35.     Swyers to date has not been informed of any client complaints to the OED or USPTO.

36.     Nevertheless, the OED has embarked on an unwarranted, oppressive, and unconstitutional investigation of Swyers impacting his ability to practice law, robbing him of

9

thousands of hours of professional time in attempts to respond to the OED requests for information, and costing hundreds of thousands of dollars in legal fees.

### RFI Abuses

37.    Swyers was served initially with a set of RFIs by Villarreal Alejandro with the OED on August 29, 2014.   The first set of RFIs served on Swyers encompassed 8 inquiries.   On or about October 29, 2014 Swyers, through counsel, complied with the OED's request and provided the requested information.

38.    On December 19, 2014, following production of materials to the OED on October 29, 2014, and following Swyers' objection, through counsel, to the OED's *ex parte* communications with Swyers' clients, OED staff attorney Villarreal Alejandro issued a second set of Requests for Information (the "Second RFI").

39.    The Second RFI contained five requests requiring responses and documentation for over 500 trademark applications -- thereby constituting, in reality, some 2500 requests. *See* Exhibit A hereto.   Like the initial RFI, the Second RFI contained an explicit threat of discipline for non-compliance. *See* Exhibit A at p. 15.

40.    Moreover, question 4 of the Second RFI requested, by inference or otherwise, for Swyers to review every signing of his name that had ever occurred before the USPTO, to determine whether any of those signatures were not entered by Swyers.   Based upon roughly 16,000 applications bearing his name at the time, and conservatively estimating three signatures per file, this request asked for Swyers to answer a question concerning 48,000 signatures. Combining this estimated 48,000-part answer with the prior estimated 2,500 questions, the

10

OED's Second RFI, in total, requested answers to approximately 50,500 questions or sub-parts. The RFI required responses by January 9, 2015.

41.     In a civil proceeding in a state or federal court, information requests containing 50,000 sub-parts would be subject to objection and the entry of a protective order.   Requests for information that invaded the attorney-client privilege could be addressed similarly.   However, no such process exists, by regulation or otherwise, before the OED, notwithstanding that the penalty for non-compliance with the OED RFIs encompasses attorney suspension or disbarment.

42.     Swyers provided the OED with responses to the second set of RFIs on March 16, 2015.

43.     On March 20, 2015, the OED requested a settlement conference at their offices in Alexandria, Virginia.   Swyers agreed, and a date was set and confirmed twice by the OED. Although Swyers and his counsel at the time, a resident of Boston, Massachusetts, spent significant time preparing for the conference and expended costs for travel, the OED cancelled the conference by email the day before and stated that the "evidentiary record was not sufficiently developed."

44.     Despite two rounds of RFIs, a third set of RFIs encompassing 2 requests with subparts was sent to Swyers on March 31, 2015 including a request for "the full names, mailing addresses and personal telephone numbers for ALL current AND former employees of The Trademark Company."   This request included dozens of past and current employees from the time Swyers opened his firm in 2001.   The OED demanded a response thereto within fifteen (15) days.   Of note, the third RFI did not contain the explicit threat for non-compliance that was

included in the first two RFIs.

45.     On or about April 15, 2015 Swyers responded to the Third RFIs propounded by the OED.  As part of his response to these third RFIs, Swyers, by counsel, objected to providing the OED with personal employee information and objected to the OED contacting all current employees without certain protections in place.

46.     On or about April 16, 2015 OED staff attorney Taylor sent a letter threatening adverse discipline to Swyers if he did not immediately supplement or restate responses provided in Swyers' April 15, 2015 response to the OED's Third RFIs. *See* Exhibit B.

47.     In response to Taylor's threats, on or about April 27, 2015 Swyers supplemented the third RFIs and provided all employee information, including personal addresses and phone numbers to the OED in response to the Third RFIs.

48.     In April, 2015, by letter to Taylor, Swyers requested the OED reschedule the prior settlement conference it had cancelled.   Taylor declined the request.

49.     On or about May 7, 2015 OED staff attorney Taylor forwarded 14 sets of RFIs to the 14 then-existing employees of The Trademark Company, none of whom are attorneys.  *See* Exhibit C.  Each RFI directed to each employee contained 64 independent information requests, including requests for attorney-client privileged communications, totaling 896 RFIs.

50.     On or about May 18, 2015, OED staff attorney Taylor forwarded to Swyers the OED's Fourth RFIs.  *See* Exhibit D.  The requests ostensibly consisted of 149 questions, but totaled at least 332 questions including subparts, and potentially thousands more depending on the interpretation of the requests' broad language.

51.     Like the initial RFI and Second RFI, the Fourth RFI again contained an explicit threat of discipline for non-compliance.

52.     Swyers again timely provided responses to the fourth set of RFIs to the OED on June 18, 2015, totaling 113 pages of responses.

53.     After receipt of Swyer's fourth set of RFIs, the OED responded that Swyers had failed to provide complete responses to approximately 37 requests contained in the Fourth RFI. The OED maintained that Swyers had violated 37 C.F.R. § 11.801(b) and was subject to discipline pursuant to 37 C.F.R. § 11.32 for failing to properly respond.

54.     On June 29, 2015 OED staff attorney Taylor forwarded to Swyers, via counsel, the OED's Fifth RFIs seeking yet more information in the ongoing investigation. *See* Exhibit E. The fifth RFIs also requested privileged client correspondence regarding trademark filings. Once again, given the scope of the requests in conjunction with the subparts thereof the OED's Fifth RFIs sought answers to hundreds of additional questions from Swyers on an exceedingly short time frame.   Again, OED staff attorney Taylor threatened Swyers, in writing, that failure to respond to the questions in this investigation would lead to adverse consequences. *See* Exhibit E.

55.     Swyers thereafter provided supplemental responses to the Fourth RFIs, totaling a dozen single-spaced pages, together with responses to the fifth RFIs, to the OED on November 6, 2015.   Despite Swyer's repeated answers to the OED's RFIs, ten days later, the OED again objected to the supplements to the fourth RFIs and fifth RFIs, maintaining that Swyers had failed to respond or failed to respond completely to both sets of RFIs, including nearly every single supplement to the fourth RFIs.   The OED threatened that Swyers violated 37 C.F.R. § 11.801(b)

13

and was subject to discipline pursuant to 37 C.F.R. § 11.32.

56.     Many of the OED's objections to Swyers' comprehensive supplement to the fourth RFIs: (a) simply repeated the so-called deficiencies of the original 113 page responses to the fourth RFIs, (b) found minutae in which to claim the responses were incomplete (i.e. the Swyers' multiple page substantive responses discussed filing "trademark applications" but failed to specifically state each time that this response also included trademark *declarations*) or (c) labeled clear, simple responses as "ambiguous".  This confirmed that regardless of Swyers' repeated attempts to answer the RFIs in full, the OED would continue to label Swyers' responses deficient no matter the response.

57.     The OED also requested in-person interviews with every current employee of the Trademark Company (most of whom work in North Carolina, but one of whom works in Boston, Massachusetts), and has interviewed, or attempted to interview, every single former employee of The Trademark Company.   Upon information and belief, the OED has left messages with former employees seeking to induce them to call the OED personnel by indicating not that the OED was investigating Swyers, but that the OED was merely seeking to confirm the individual's past employment.

58.     The RFIs were not limited to seeking factual information and documents, but extended to demands that Swyers provide extensive legal analysis justifying the procedures utilized by The Trademark Company.

59.     Swyers has expended extraordinary efforts in attempts to comply with the oppressive requests of the OED but has been informed numerous times throughout the

14

investigation (April 16, 2015, June 29, 2015 and November 16, 2015) that he has failed to respond in a manner satisfactory to the OED investigators. Regardless of how many times and in how many ways Swyers responds, he is told by the OED that his responses are insufficient and that he faces prompt adverse consequences subjecting Swyers to independent disciplinary grounds for failure to respond that could result in suspension of his ability to practice before the USPTO.

60.     Responding to the OED's requests has required Plaintiff to incur over a quarter of a million dollars in legal fees, and to devote hundreds of hours of time away from his practice, with additional time and resources having to be spent in efforts to mitigate the damage done to Swyer's business and reputation.

61.     The OED's investigation throughout has been characterized by an utter lack of procedural safeguards protecting Swyers' rights and his clients'. The OED's requests for written answers, documents, and justifications of legal positions were clearly overly burdensome and oppressive and invaded the attorney-client privilege, yet no means existed for Swyers to seek review and relief from the abusive requests. Nevertheless, Swyers had no option but to answer the RFIs because failure to comply would itself constitute grounds for disciplinary sanctions. An attorney should not be compelled to subject himself to disciplinary charges, and the adverse consequences that may flow therefrom, in order to protect his client's confidences or to challenge unduly burdensome discovery. Instead, the routinely abusive nature of the requests, the denial of any avenue for challenge, and the threats of disciplinary action for non-compliance, are hallmarks of a system lacking those procedural safeguards to which Swyers, or anyone, is entitled

to under the Constitution.

62.     The unbridled oppressive use of RFIs without any means whatsoever to challenge
them, transforms an ethics investigation into a strike suit, forcing attorneys targeted by the OED
to accede to any OED settlement request because of the inability of the practitioner to afford to
comply with the process.

63.     After a year and a half of investigation and the extraordinary compliance efforts,
Swyers has still not been apprised in any meaningful way of what it is that he is supposed to have
done wrong.   In a manner truly Kafkaesque, the OED's RFIs repeatedly make only vague
references to violations of 45 USPTO Rules of Professional Conduct as being the potential basis
for a determination of violations under 37 CFR §11.32.

64.     Ironically, as best as can be gleaned from the myriad of OED RFIs, the OED's
concerns regarding Swyers' practice appear to be fairly limited: whether in certain instances
paralegals had entered Swyers' electronic signature, the degree to which paralegals assisted in the
preparation of applications, isolated instances of a sample specimen having been uploaded in
error with an electronically submitted application instead of the specimen actually provided by
the client, and the extent to which the acceptance of credit card payments complied with trust
account requirements. Upon information and belief, few if any factual disputes exist between
Swyers and the OED relative to any of these issues, although significant disagreement exists as to
the legal conclusions to be drawn from the facts.

65.     Swyers has expended over $250,000 in legal fees in responding to the issuance of
RFIs in this matter.   Swyers has also suffered damages due to lost time in an amount in excess of

$300,000.  Swyers has suffered and will continue to suffer ongoing injury to his legal practice and has been harassed and oppressed in the conduct of his business as a trademark lawyer, all ostensibly in the name of the proper supervision of lawyers by the USPTO.  In addition to seeking damages for legal fees and professional time required to be expended as a result of unconstitutional conduct by the individual defendants, Swyers seeks injunctive relief against the OED proceeding as to disciplinary action that are in any way based on an alleged deficiency in Swyer's responses to RFIs.

### FIRST CLAIM FOR RELIEF
#### (Violation of Due Process)

66.     The Plaintiff Swyers hereby incorporates by reference his responses to paragraphs 1-65 of his complaint as if fully set forth herein.

67.     By means of its actions set forth above, the USPTO, through the individual actions of Taylor, Jaicks, and Villarreal Alejandro violated and continue to violate Swyers' rights to procedural due process of law safeguarded by the Fifth Amendment of the Constitution relative to the inquiry into and actions regarding his professional work as a trademark lawyer.

68.     The actions of the USPTO, Taylor, Jaicks, and Villarreal Alejandro entitle Swyers to both injunctive and monetary relief, which is requested by the court.

### SECOND CLAIM FOR RELIEF
#### (Unreasonable Search)

69.     The Plaintiff Swyers hereby incorporates by reference his responses to paragraphs 1-68 of his complaint as if fully set forth herein.

70.     The OED's and the individual defendants' promulgation of its RFIs to Swyers as

17

set forth above amounts to an unreasonable search within the meaning of the Fourth Amendment of the United States Constitution, entitling Swyers to relief from same. The accompanying intrusion upon the attorney-client privilege invades Swyer's rights to privacy under the Fourth Amendment.

71.     The actions of the USPTO, Taylor, Jaicks, and Villarreal Alejandro entitle Swyers to both injunctive and monetary relief, which is requested by the court.

## DAMAGES

72.     The Plaintiff Swyers hereby incorporates by reference his responses to paragraphs 1-71 of his complaint as if fully set forth herein.

73.     The conduct of the individual defendants in violation of Swyers' constitutional rights entitles Swyers to damages caused thereby, pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

74.     The Plaintiff has been damaged as a result of the Defendants' unlawful acts in an amount to be determined at trial, but in no event less than $550,000.

75.     Further pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and *Davis v. Passman*, 442 U.S. 228 (1979), Plaintiff is entitled to damages including 1) economic damages, 2) compensatory damages, 3) court costs and 4) any other relief the court may deem just and proper.

## INJUNCTION/T.R.O.

76.     The Plaintiff Swyers hereby incorporates by reference his responses to paragraphs 1-75 of his complaint as if fully set forth herein.

18

77.     The enforcement of charges of violations of disciplinary rules based in whole or in part upon the failure of Swyers to answer to the OED's satisfaction RFIs that violate Swyers' constitutional rights as set forth above, is itself unconstitutional.   If such action is not enjoined, Swyers will suffer immediate and irreparable harm through, among other things, loss of his time, loss of income, incurring attorney's fees, loss of reputation, and loss of clients. Swyers asks this Court to enjoin Defendants on a preliminary and permanent basis from the enforcement of charges of violations of disciplinary rules based in whole or in part upon the failure of Swyers to answer to the OED's satisfaction RFIs that violate Swyers' constitutional rights.

78.     Swyers has no other remedy at law.

WHEREFORE, the Plaintiff Swyers prays unto the court for judgement follows:

1.     An award of economic and compensatory damages against the individual defendants;

2.     For a preliminary and permanent injunction from the enforcement of charges of violations of disciplinary rules based in whole or in part upon the failure of Swyers to answer to the OED's satisfaction RFIs that violate Swyers' constitutional rights;

3.     An award of reasonable costs and attorney's fees; and

4.     For such other and further relief as the court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, a trial by jury is demanded in this action of all issues so triable.

Dated:   January 6, 2016                    Respectfully submitted,

19

MATTHEW H. SWYERS

SANDS ANDERSON PC

_____
Danny M. Howell        (VSB No. 30352)
dhowell@sandsanderson.com
Michael T. Marr        (VSB No. 48536)
mmarr@sandsanderson.com
Sarah A. Bucovetsky  (VSB. No. 78322)
sbucovetsky@sandsanderson.com
1497 Chain Bridge Road, Suite 202
McLean, VA   22101
(703) 893-3600
(703) 893-8484 (fax)

*Counsel for Plaintiff Matthew H. Swyers*